IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT IRICK, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, ET AL., | : | |
| Defendants | : | NO. 07-0013 |

MEMORANDUM AND ORDER

PRATTER, J.                                                     MAY 19, 2008

Plaintiff Robert Irick sued the City of Philadelphia and Police Officer Billy Golphin in his individual capacity pursuant to 42 U.S.C. § 1983 and state law for excessive force, false arrest and false imprisonment, unlawful search and malicious prosecution.  Mr. Irick allegedly was hit with bullets or bullet fragments fired from Officer Golphin's gun, and then arrested and charged with various criminal offenses in violation of the Fourth and Fourteenth Amendments of the United States Constitution and state law.

Plaintiff's counsel has confirmed to the Court that Mr. Irick will not pursue any claims against the City of Philadelphia, and will only proceed to trial on the federal and state claims against Officer Golphin in his individual capacity.  Officer Golphin moves for summary judgment on those claims on the grounds that Officer Golphin did not intend to shoot Mr. Irick, and that there was probable cause to subsequently arrest and charge him.  Mr. Irick opposes the Motion, asserting that Officer Golphin's acts and intentions are disputed issues of fact for the jury to decide.

Because there are genuine issues as to many material facts, the Motion will be denied as to all claims except the unlawful search claim, which Mr. Irick has withdrawn.  That claim, and

the claims against the City of Philadelphia, will be dismissed.

**FACTUAL BACKGROUND**

The following facts are undisputed.  On March 2, 2005, Mr. Irick came out of his house at 56 Dearborn Street and saw two men confronting his wife, Yolanda Norris Irick.  (Def. and Pl. Statement of Facts ¶ 3.)  These men were Philadelphia Police Officers Golphin and Ross.  (Id.)  Mr. Irick's dog was standing near Mr. Irick, barking.  (Id. at ¶ 3.)  Mr. Irick yelled at the men to leave his wife alone. (Id. at ¶ 4.)

For reasons that are disputed, Officer Golphin then fired numerous gunshots in the direction of Mr. Irick and/or his dog.  Mr. Irick sustained two gunshot wounds and the dog was killed.  (Id. at ¶¶ 5-6.)  Officer Golphin then arrested Mr. Irick and the Philadelphia Fire Rescue transported him to a hospital for treatment of his gunshot wounds.  (Id. at ¶ 10.)  It was determined that Mr. Irick had (and still has) a bullet fragment in his left upper arm, with no exit wound and no fracture.  (Id. at ¶ 8.)  Mr. Irick also was treated for "a superficial grazing to the lower left quadrant."  (Id. at ¶ 9.)  After receiving treatment in the emergency room, Mr. Irick was released into police custody that same night.  (Id. at ¶ 10.)

As a result of this incident, Mr. Irick first was charged with possession of an instrument of crime, simple assault, aggravated assault, recklessly endangering another person, obstructing justice and hindering apprehension.  (Id. at ¶ 11.)  Mr. Irick ultimately was charged with aggravated assault, possessing instruments of crime, simple assault, recklessly endangering another person and obstructing the administration of law and other governmental functions.  (Id. at ¶ 12.)  These charges were withdrawn by the prosecutor at the Municipal Court of Philadelphia County three months later on June 8, 2005.  (Id. at ¶ 13.)  Mr. Irick was later re-arrested for the

same charges, but those charges were also dismissed on December 12, 2005 for lack of prosecution.  (Id.)

In accordance with City of Philadelphia Police Department policy and procedure, the Internal Affairs Division – Shooting Team conducted an investigation of Officer Golphin's firearm discharge.  (Id. at ¶ 14.)  During the course of the investigation, several officers were interviewed, including Officer Golphin, but Mr. Irick declined to be interviewed due to the pending criminal charges against him.  (Id. at ¶ 17.)  A canvassing of the neighborhood produced no additional witnesses to the incident.  (Id. at ¶ 18.)  A bullet fragment was found on the sidewalk near the front steps leading to the Irick residence at 56 Dearborn Street.  (Id. at ¶ 9.)  Upon concluding the investigation, the Internal Affairs Division determined that Officer Golphin had discharged his firearm within the guidelines of the Philadelphia Police Department directive pertaining to the use of deadly force.  (Id. at ¶ 19.)

In accordance with established procedure, the Philadelphia Police Department Firearms Discharge Review Board also reviewed the shooting and determined that Officer Golphin acted within the guidelines of the Philadelphia Police Department for use of deadly force.  (Id. at ¶ 21.)  The Philadelphia District Attorney declined to prosecute Officer Golphin.  (Id. at ¶ 22.)  Less than two weeks after the incident, Officer Golphin completed mandatory post firearms discharge training at the Police Academy.  (Id. at ¶ 23.)

Several key aspects of this narrative are in dispute.[1]

---

[1] The parties also dispute other aspects of the incident, such as whether the officers had seen Ms. Irick purchasing drugs and whether she was fleeing from them when they detained her (id. at ¶ 2), but at least for present purposes this is immaterial to the series of events that followed.

First, the parties dispute whether Officers Golphin and Ross identified themselves as police officers, or were wearing identifiable police clothing and badges.  (See id. at ¶¶ 3, 5.)

Second, the parties dispute whether Mr. Irick's dog charged or otherwise attempted to attack the officers.  (See id. at ¶¶ 3, 5, 6.)  Officer Golphin contends that Mr. Irick "released his grip on the dog and the dog charged towards Police Officer Ross and [Ms. Irick]," prompting Officer Golphin to fire his weapon at the dog.  (Id. at ¶¶ 5, 6.)  For this proposition, Officer Golphin cites to the statement of Officer Ross given in connection with the investigation.  (Def. Mot. Ex. 2 at A10-A12.)  In contrast, Mr. Irick contends that he never ordered the dog to attack the officers or anyone else, and the dog, which was standing directly in front of Mr. Irick, never charged or moved towards the officers, either before or after Office Golphin fired the shots.  (See id. at ¶¶ 3, 6.)  Mr. Irick also contends that Officer Golphin fired directly at Mr. Irick, not at Mr. Irick's dog.  (See id. at ¶¶ 3, 6, 24.)  Mr. Irick's version is supported by his own affidavit and the affidavit of Ms. Irick.  (Pl. Response Exs. A and B.)  Mr. Irick also argues that aspects of the physical evidence lends credence to his version of the facts.

Third, the parties dispute whether Mr. Irick was "accidentally" struck by "a ricocheting bullet fragment."  (Id. at ¶¶ 25, 26.)  Officer Golphin contends that the forensic evidence leads to "the reasonable inference" that Mr. Irick was struck by ricocheting bullet fragments, which purportedly establishes that Officer Golphin did not intend to shoot Mr. Irick.  (Id. at ¶ 26.)  Mr. Irick counters that "[t]he fact that the police did not recover all of the bullets fired by Officer Golphin raises the equally plausible inference that the bullet that remains lodged in Mr. Irick's arm was caused by a direct gunshot, not a ricochet."  (Id. at ¶ 26.)  In any event, however, this dispute is immaterial to whether Officer Golphin fired directly at Mr. Irick, and whether Officer

4

Golphin had any justification for firing in the general direction of Mr. Irick and his dog at all.  It is undisputed only that Officer Golphin fired several shots in the general direction of Mr. Irick's dog – and, therefore, in the general direction of Mr. Irick as well, because he was standing behind his dog.

**LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the Court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case," id. at 325, or by offering affirmative evidence which demonstrates that the plaintiff cannot prove his case, Lawrence v. Nat'l Westminister Bank N.J., 98 F.3d 61, 69 (3d Cir. 1996).  After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

The evidence provided by the nonmovant is to be believed, and the Court must draw all reasonable and justifiable inferences in the nonmovant's favor, Anderson, 477 U.S. at 255, and resolve all "doubts and issues of credibility against the moving party," Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 874 (3d Cir. 1972).  At the summary judgment stage, the Court's function "is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  Brooks v. Kyler, 204 F.3d 102, 105 n.5 (3d Cir. 2000).

**DISCUSSION**

Mr. Irick sued Officer Golphin in his individual capacity pursuant to Section 1983 and state law for excessive force, false arrest and false imprisonment, unlawful search and malicious prosecution.  Section 1983 alone does not create any substantive rights, but rather creates a remedy for violations of the Constitution.  To state a claim under Section 1983, Mr. Irick must demonstrate that Officer Golphin, acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States.  Kneipp v. Tedder, 95 F.3d 1199, 1203 (3d Cir. 1996).

**I.    EXCESSIVE FORCE**

Officer Golphin asserts two grounds for summary judgment with respect to the excessive force claim: (1) that deadly force was objectively reasonable under the circumstances, and (2) that the shooting of Mr. Irick was not a "seizure" within the meaning of the Fourth Amendment because it was an "accident."

**A.    Was the use of force reasonable?**

A claim that law enforcement officers have used excessive force in the course of an

6

arrest, investigatory stop, or other seizure is analyzed under the Fourth Amendment

"reasonableness" standard, not under a substantive due process standard.  Graham v. Connor, 490

U.S. 386, 395 (1989).  Determining whether the force used to effect a particular seizure is

"reasonable" under the Fourth Amendment requires balancing the "nature and quality" of the

intrusion on the individual against the countervailing governmental interests.  Id. at 396.  The

question is whether an official's actions are "objectively reasonable" in light of the facts and

circumstances confronting him, without regard to his underlying intent or motivation.  Id. at 397.

Although the issue of reasonableness in an excessive force claim is usually a question for the

jury, a court may grant summary judgment if it concludes, after resolving all factual disputes in

favor of the plaintiff, the officer's use of force was objectively reasonable under the

circumstances.  Estate of Smith v. Marasco, 318 F.3d 497, 516 (3d Cir. 2003).

The Supreme Court has held that deadly force cannot be used unless the officer has

probable cause to believe that the suspect "poses a significant threat of death or serious physical

injury to the officer or others."  Tennessee v. Garner, 471 U.S. 1, 8-9 (1985).  Here, it is

undisputed only that Mr. Irick yelled at the officers to leave his wife alone, and that his dog was

standing near him and barking.  On these facts alone, the use of deadly force by Officer Golphin

cannot be said to have been reasonable.  See Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999)

(issues of disputed fact as to whether officer was in danger at the time deadly forced was used

bars summary judgment); Curley v. Klem, 298 F.3d 271, 280 (3d Cir. 2002) (possession of

weapon by suspect not sufficient for use of deadly force where the suspect had gun drawn but not

pointed at the defendant and no physical movements indicated immediate danger).

Here, resolving all factual disputes in favor of Mr. Irick, issues of fact preclude a finding

that Officer Golphin's conduct was objectively reasonable under the circumstances presented in this case.  Mr. Irick asserts that he did not use any force against Officers Golphin and Ross, and did not manifest an intent to use force against them.  As previously discussed, the parties dispute whether Mr. Irick's dog charged or otherwise attempted to attack the officers.  (See Def./Pl. Statement of Facts ¶¶ 3, 5, 6.)  Officer Golphin contends that Mr. Irick "released his grip on the dog and the dog charged towards Police Officer Ross and [Ms. Irick]," prompting Officer Golphin to fire his weapon at the dog.  (Id. at ¶¶ 5, 6.)  Mr. Irick, however, maintains that he never ordered the dog to attack the officers or anyone else, and the dog, who was standing directly in front of Mr. Irick, never charged or moved towards the officers.  (See id. at ¶¶ 3, 6.)  Mr. Irick's version is supported by his own affidavit and the affidavit of Ms. Irick.  (Pl. Response Exs. A and B.)  Inasmuch as Officer Golphin's gun discharged some five times, and recognizing that the unlawful use of excessive force does not depend upon a good aim, these factual disputes preclude summary judgment on the excessive force claim.

### B.    Does the shooting constitute a seizure?

The Fourth Amendment does not protect against *unintended consequences* of government action.  Brower v. County of Inyo, 489 U.S. 593, 596 (1989).  In order for a seizure to occur, the detention or taking must be willful; an unknowing act cannot be a "seizure" within the meaning of the Fourth Amendment.  Id.  Specifically, in a police shooting, there is no violation of an individual's Fourth Amendment rights if the police officer did not intend the bullet to bring the individual within the officer's control.  Troublefield v. City of Harrisburg, 789 F. Supp. 160, 166 (M.D. Pa. 1992).

However, a seizure nonetheless occurs "when an unintended person is the object of

8

detention, so long as the means of detention are intentionally applied to that person.  Berg v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000) (citing Brower, 489 U.S. at 596; Medeiros v. O'Connell, 150 F.3d 164, 169 (2d Cir. 1998); Rucker v. Harford County, 946 F.2d 278, 281 (4th Cir. 1991); Landol-Rivera v. Cruz Cosme, 906 F.2d 791, 796 (1st Cir. 1990)).  The Third Circuit Court of Appeals explained this principle by way of the following example: "if a police officer fires his gun at a fleeing robbery suspect and the bullet inadvertently strikes an innocent bystander, there has been no Fourth Amendment seizure.  If, on the other hand, the officer fires his gun directly at the innocent bystander in the mistaken belief that the bystander is the robber, then a Fourth Amendment seizure has occurred."  Id. (citations omitted).  Thus, our Court of Appeals has drawn a fine line between intentional shooting where the target's identity is mistaken, and intentional shooting where the target is missed and a non-target is hit.  The former is a seizure, the latter is not.  Id.

Mr. Irick seems to argue that even if the jury were to believe that Officer Golphin was targeting only the dog, Officer Golphin nonetheless has liability because he knew that Mr. Irick was directly in the line of fire and, therefore, intentionally discharged his weapon in a manner that effectuated a seizure of Mr. Irick.  (Pl. Response 8.)  This is not an accurate interpretation of the governing law *in the Third Circuit*, though it would appear to be so in the Sixth Circuit, see Fisher v. City of Memphis, 234 F.3d 312, 318 (6th Cir. 2000) (finding a seizure where the defendant officer shot at a car with the intent of hitting the driving, but inadvertently struck a passenger, because the passenger was in sufficiently close proximity to establish a seizure through the "intentionally applied exertion of force").  The Third Circuit Court of Appeals has not extended the definition of a "seizure" to include persons who are not a target, even if they are

"known" to be in the line of fire.

The Court need not decide at this juncture whether and for how much to extend the Third Circuit rule because the identity of Officer Golphin's intended target is a hotly disputed issue of fact. Although Officer Golphin blithely asserts that "[i]t is undisputed that Mr. Irick was not Police Officer Golphin's intended target," (Def. Mot. 10), this is not an accurate rendition of the pleadings. While Officer Golphin contends that he intended to shoot only Mr. Irick's dog, Mr. Irick contends that Officer Golphin fired *directly* at Mr. Irick. (See Def./Pl. Statement of Facts ¶¶ 3, 5, 6.) Thus, the legal issue of whether there was a "seizure" within the meaning of the Fourth Amendment cannot be resolved at this stage of the proceedings. As previously discussed, if the shooting was indeed a seizure, there is sufficient evidence in the record to raise a genuine issue of fact as to whether the use of force was objectively reasonable.

## II.   FOURTEENTH AMENDMENT: DELIBERATE INDIFFERENCE

Even if Mr. Irick was not intentionally "seized" within the meaning of the Fourth Amendment, he may still have a Fourteenth Amendment due process claim. As a general matter, claimants should not resort to due process principles if the Fourth Amendment is implicated. Graham v. Connor, 490 U.S. 386, 394-95 (1989). Where, however, the consequences of the officer's conduct were unintentional, the Fourteenth Amendment may apply. Thus, if the Court determines that Mr. Irick was shot unintentionally and, therefore, not "seized," then Mr. Irick may pursue a substantive due process claim under the Fourteenth Amendment. County of Sacramento v. Lewis, 523 U.S. 833, 844-46 (1998); Berg, 219 F.3d at 274.

In both his original and amended motions for summary judgment, Officer Golphin asserts that a Fourteenth Amendment due process analysis is inappropriate because the Fourth

10

Amendment is implicated.  At the same time, however, Officer Golphin argues that there was no seizure because Officer Golphin did not intend to shoot Mr. Irick.  But if there is no seizure, then a person injured as a result of police misconduct may pursue a substantive due process claim under Section 1983.  Lewis, 523 U.S. at 843-44 ("Substantive due process analysis is therefore inappropriate in this case *only if* respondents' claim is 'covered by' the Fourth Amendment.") (emphasis added).

Because the legal issue of whether there was a seizure implicating the Fourth Amendment turns on disputed factual events, the Court cannot determine at this time whether the Fourth Amendment or the Fourteenth Amendment applies.  As discussed above, were a jury to find there was a seizure (i.e., Officer Golphin intended to shoot Mr. Irick), there is sufficient evidence in the record for the jury to determine there was a violation of the Fourth Amendment.  Likewise, were a jury to find that there was no seizure (i.e., Officer Golphin did not intend to shoot Mr. Irick), then there is sufficient evidence in the record for a jury to find that Officer Golphin was so reckless and/or indifferent to Mr. Irick's rights as to violate the Fourteenth Amendment.

Where a defendant does not intentionally cause the plaintiff to be seized, but is nonetheless responsible for the seizure, a due process "deliberate indifference," rather than a Fourth Amendment analysis, may be appropriate.  Berg, 319 F.3d at 274 (citing Lewis, 523 U.S. at 843-44).  The standard articulated by the Supreme Court is whether the executive abuse of power was sufficiently reckless or deliberately indifferent to the plaintiff's rights as to "shock the conscience."  Lewis, 523 U.S. at 846.

As a general matter, negligence by public officials is not actionable as a due process violation.  Berg, 219 F.3d at 274; see also Davidson v. Cannon, 474 U.S. 344, 347 (1986).

11

"[C]onduct *intended* to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, 523 U.S. at 849 (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)) (emphasis added). However, "the point of the conscience shocking" may be reached "when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or 'gross negligence.'" Id. (citing Daniels, 474 U.S. at 334 n.3).

The appropriateness of a due process claim depends upon both the official conduct at issue and the circumstances. "Rules of due process are not subject to mechanical application in unfamiliar territory. Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." Id. at 850. "As the very term 'deliberate indifference' implies, the standard is sensibly employed only when actual deliberation is practical." Lewis, 523 U.S. at 851 (citing Whitley v. Albers, 475 U.S. 312, 320 (1986)).

This is particularly relevant when evaluating the conduct of police officers, who "are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving." Graham, 490 U.S. at 397. As the Supreme Court explained,

> Like prison officials facing a riot, the police on an occasion calling for fast action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made "in haste, under pressure, and frequently without the luxury of a second chance."

12

Lewis, 523 U.S. at 853 (citations omitted). Accordingly, "when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates 'the large concerns of the governors and the governed.'" Id. (quoting Daniels, 474 U.S. at 332).

In sum, depending upon the circumstances, a police officer's conduct can be found to shock the conscience where (1) the officer does not have time to deliberate about his actions, if he intended to cause harm; (2) there is limited, but some time to deliberate about his actions, if he disregarded a great risk that serious harm would result; or (3) where there was sufficient time to deliberate, if the officer was deliberately indifferent to the safety of the plaintiff. Lewis, 523 U.S. at 844-54; Ziccardi v. City of Philadelphia, 288 F.3d 57, 66 (3d Cir. 2002); Marasco, 430 F.3d at 153. In Lewis, the Supreme Court held that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment. Lewis, 523 U.S. at 854. The Supreme Court was careful to note, however, that "[i]t is a different story when a citizen suffers or is seriously threatened with physical injury due to a police officer's *intentional misuse* of his vehicle." Id. at 854 n.13 (quoting Checki v. Webb, 785 F.2d 534, 538 (5th Cir. 1986)).

On the record presented here, there is a fundamental factual dispute as to whether Officer Golphin fired directly at Mr. Irick, even though Mr. Irick himself had not threatened the officers in any way and his dog remained by his side, or fired at a charging dog released by Mr. Irick. If Mr. Irick's version of events is credited, Officer Golphin's conduct could be found to "shock the conscience" under any of the three standards articulated above.

13

### III.  FOURTH AMENDMENT: FALSE ARREST AND FALSE IMPRISONMENT

The Fourth Amendment protects "against unreasonable searches and seizures."  U.S. Const. Amend. IV.  It is undisputed that subsequent to the shooting, Mr. Irick was arrested, handcuffed and transported to the police station, and thus "seized" within the meaning of the Fourth Amendment.

An arrest may violate the standards of the Fourth Amendment if it is made without probable cause to believe that a crime has been committed.  Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994).  Thus, the proper inquiry in a Section 1983 claim based on false arrest is "'whether the arresting officers had probable cause to believe the person arrested had committed the offense.'"  Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995).  If the arresting officer lacked probable cause to make the arrest, the arrestee also has a claim under § 1983 for "false imprisonment based on a detention pursuant to that arrest."  Id. at 636 (citing Thomas v. Kippermann, 846 F.2d 1009, 1011 (5th Cir. 1988)).

Typically, the existence of probable cause in a § 1983 action is a question of fact.  Wilson v. Russo, 212 F.3d 781, 796 (3d Cir. 2000) (citing Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)); Groman, 47 F.3d at 635.  A court, however, can conclude that probable cause did not exist as a matter of law if the evidence viewed in the light most favorable to the non-moving party would not reasonably support a finding of probable cause.  See Sherwood, 113 F.3d at 401. It is the Court's role to determine whether the objective facts available to the police officer at the time of the arrest would justify a reasonable belief that an offense was being committed.  Victory Outreach Ctr. v. Melso, 313 F. Supp. 2d 481, 488 (E.D. Pa. 2004) (citing Johnson v. Campbell, 332 F.3d 199, 211 (3d Cir. 2003)).  Thus, the Court must examine whether any facts in the record

14

reasonably support a finding of a lack of probable cause.

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000) (citing Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995)).[2] Thus, "the probable cause standard does not turn on the actual guilt or innocence of the arrestee, but rather, whether the arresting officer reasonably believed that the arrestee had committed the crime." Radich v. Goode, 886 F.2d 1391, 1397 (3d Cir. 1989); see also Barna, 42 F.3d at 819 ("The test for an arrest without probable cause is an objective one, based on the facts available to the officers at the moment of arrest."). The good faith or bad faith of the arresting officer is entirely irrelevant. Whren v. United States, 517 U.S. 529, 531 (1998).

Officer Golphin moves for summary judgment on Mr. Irick's false arrest/false imprisonment claim on the grounds that Officer Golphin had probable cause to arrest Mr. Irick for the crimes of simple assault, aggravated assault, possessing an instrument of crime, recklessly endangering another person, obstruction of justice, and hindering apprehension of another person. This is based on Officer Golphin's purported belief, under the facts and circumstances within Officer Golphin's knowledge, that Mr. Irick had set his dog on the police officers to prevent the arrest of his wife.

Mr. Irick contends that the evidence in the record supports a finding that there was no probable cause to believe that Mr. Irick had committed any crime. Viewed in the light most

---

[2] "The validity of an arrest is determined by the law of the state where the arrest occurred." United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Ker v. California, 374 U.S. 23, 37 (1963)).

favorable to Mr. Irick, the evidence suggests that neither Mr. Irick nor his dog had threatened or

attacked the officers and, therefore, Mr. Irick's subsequent arrest was unlawful.  The facts

relevant to the majority of crimes cited by Officer Golphin – aggravated assault,[3] simple assault,[4]

---

[3] Under Pennsylvania law, a person is guilty of aggravated assault if he:

> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
> (2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty;
> (3) attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty;
> (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;
> (5) attempts to cause or intentionally or knowingly causes bodily injury to a teaching staff member, school board member or other employee, including a student employee, of any elementary or secondary publicly-funded educational institution, any elementary or secondary private school licensed by the Department of Education or any elementary or secondary parochial school while acting in the scope of his or her employment or because of his or her employment relationship to the school;
> (6) attempts by physical menace to put any of the officers, agents, employees or other persons enumerated in subsection (c), while in the performance of duty, in fear of imminent serious bodily injury; or
> (7) uses tear or noxious gas as defined in section 2708(b) (relating to use of tear or noxious gas in labor disputes) or uses an electric or electronic incapacitation device against any officer, employee or other person enumerated in subsection (c) while acting in the scope of his employment.

18 Pa. C.S.A. § 2702(a).  An "officer" includes a police officer.  Id. at § 2702(c)(1).

[4] Under Pennsylvania law, a person is guilty of simple assault if he:

> (1) attempts to cause or intentionally, knowingly or recklessly causes

16

recklessly endangering another person,[5] and possessing an instrument of crime[6] – are disputed.

Specifically, it is disputed whether Mr. Irick took any action that would have led the police

officers to believe he had (or intended to) set his dog on them.  Officer Golphin emphasizes that

it is the belief of the officers at the time of the arrest that determines probable cause and,

therefore, whether or not Mr. Irick actually set his dog on the officers is irrelevant.  But if Mr.

Irick's story is credited, Officer Golphin's purported belief that the officers were under attack

would not be objectively reasonable.

     With respect to the crimes of obstruction of justice and hindering apprehension of another

---

bodily injury to another;
(2) negligently causes bodily injury to another with a deadly weapon;
(3) attempts by physical menace to put another in fear of imminent serious bodily injury; or
(4) conceals or attempts to conceal a hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer or an officer or an employee of a correctional institution, county jail or prison, detention facility or mental hospital during the course of an arrest or any search of the person.

18 Pa. C.S.A. § 2701(a).

    [5] Under Pennsylvania law, a person commits the crime of "recklessly endangering another person" if he "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."  18 Pa. C.S.A. § 2705.

    [6] Under Pennsylvania law, a person commits a misdemeanor of the first degree if he "possesses any instrument of crime with intent to employ it criminally, or if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally."  18 Pa. C.S.A. § 907(a)-(b).  An "instrument of crime" can include any of the following: "(1) [a]nything specially made or specially adapted for criminal use," and "(2) [a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have."  Id. at §907(d).  A "weapon" is defined as "[a]nything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have."  Id.

person, some of the relevant facts are undisputed.  It is undisputed that Officers Golphin and

Ross were in the process of arresting Ms. Irick on charges of possessing marijuana when Mr.

Irick came out of his house.  (Pl. Response Ex. B.)  It is also undisputed that Mr. Irick yelled at

the police officers to leave his wife alone.  (Def./Pl. Statement of Facts ¶ 4.)  However, these

facts alone are insufficient to establish probable cause to arrest Mr. Irick because under

Pennsylvania law, a person commits the crime of "obstruction of law or another governmental

function" only if "he intentionally obstructs, impairs or perverts the administration of law or

other governmental function by force, violence, physical interference or obstacle . . . ."  18 Pa.

C.S.A. § 5101.[7]  The key fact of whether Mr. Irick set his dog on the officers – which would

undoubtedly constitute the requisite act of "force, violence, physical interference or obstacle" –

remains in dispute.

       Similarly, crediting Mr. Irick's version of the events, the facts and circumstances within

Officer Golphin's knowledge were insufficient for him to believe Mr. Irick was committing the

---

[7] 18 Pa. C.S.A. § 5101 provides:

> [a] person commits a misdemeanor of the second degree if he
> intentionally obstructs, impairs or perverts the administration of law
> or other governmental function by force, violence, physical
> interference or obstacle, breach of official duty, or any other unlawful
> act, except that this section does not apply to flight by a person
> charged with crime, refusal to submit to arrest, failure to perform a
> legal duty other than an official duty, or any other means of avoiding
> compliance with law without affirmative interference with
> governmental functions.

18 Pa. C.S.A. § 5101.

crime of hindering apprehension.[8]  Under analogous statutes, simply yelling at the police does not alone constitute a crime.  See, e.g., Commonwealth v. Hock, 728 A.2d 943, 947 (Pa. 1999) (holding that "single epithet, uttered in a normal tone of voice while walking away from the officer" did not constitute disorderly conduct and noting that "[t]he police must expect that, as part of their jobs, they will be exposed to daily contact with distraught individuals in emotionally charged situations"); Commonwealth v. Frankfeld, 173 A. 834, 836 (Pa. Super. 1934) (holding that "verbal remonstrances, unaccompanied by threats or incitement to resistance, are insufficient [to establish obstruction of legal process].  But where there is a presence of deterring power and threats of physical force, either express or implied, if the service of the writ or process is executed, it comes within the contemplation of the statute.").[9]

Thus, because the material facts are disputed, summary judgment is not appropriate on Mr. Irick's false arrest and false imprisonment claims.

---

[8] Under Pennsylvania law, a person commits the offense of hindering apprehension if, with intent to hinder the apprehension of another for crime he:

> (1) harbors or conceals the other;
> (2) provides or aids in providing a weapon, transportation, disguise or other means of avoiding apprehension or effecting escape;
> (3) conceals or destroys evidence of the crime, or tampers with a witness, informant, document or other source of information, regardless of its admissibility in evidence;
> (4) warns the other of impending discovery or apprehension, except that this paragraph does not apply to a warning given in connection with an effort to bring another into compliance with law; or
> (5) provides false information to a law enforcement officer.

18 Pa. C.S.A. § 5105.

[9] Research has not uncovered any Pennsylvania state or federal cases addressing the precise issue of whether words alone can suffice to establish probable cause to arrest for the crime of hindering apprehension.

**IV.     FOURTH AMENDMENT: MALICIOUS PROSECUTION**

Mr. Irick also asserts a malicious prosecution claim against Officer Golphin.  The Fourth Amendment protects a person from being subjected to malicious prosecution.  To establish a malicious prosecution claim, Mr. Irick must prove: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in Mr. Irick's favor; (3) the proceeding was initiated without probable cause; (4) Officer Golphin acted maliciously or for a purpose other than bringing Mr. Irick to justice; and (5) Mr. Irick suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding.  Marasco, 318 F.3d at 521.

Here, it is undisputed that Officer Golphin caused the initiation of a criminal proceeding against Mr. Irick, and that the proceeding ended in Mr. Irick's favor.  It also appears to be undisputed, or at least beyond dispute, that Mr. Irick's liberty was restricted "consistent with the concept of a seizure" until the charges against him were dismissed, which occurred months later. He was released from prison only on the condition that he appear in court to face criminal charges or risk the issuance of a bench warrant for his arrest.  See Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998) (holding that requirements of posting bond, attending all court hearings, contacting the Court, as well as pre-trial prohibition on travel, constituted a "seizure" within the meaning of the Fourth Amendment); see also Albright v. Oliver, 510 U.S. 266, 279 (1994) (Ginsburg, J., concurring) (stating that a defendant is seized when "he is bound to appear in court and answer the state's charges").

Officer Golphin asserts that summary judgment is appropriate because he had probable cause to arrest Mr. Irick and because there is insufficient evidence in the record to establish that Officer Golphin acted maliciously or for a purpose other than bringing Mr. Irick to justice.  These

arguments are unpersuasive.  It does not follow that a lawful *arrest* provides probable cause to *prosecute* the arrestee for a given crime.  See Wissert v. Quigg, 2008 WL 1899993, at *5 (E.D. Pa. Apr. 25, 2008) (slip op.).  As discussed above, the facts relevant to whether Mr. Irick committed a crime (or even appeared to be committing a crime) are disputed.  The jury must determine whether Officer Golphin believed that Mr. Irick had set his dog on the officers and, if so, whether such a belief was reasonable under the circumstances.  Similarly, the question of malice is also a disputed issue of fact.  Mr. Irick's version of events, if credited, provides sufficient evidence for a reasonable jury to infer malice.  See Hinchman v. Moore, 312 F.3d 198, 205 (6th Cir. 2002) (falsifying facts to establish probable cause is a malicious act that supports a claim of malicious prosecution); Rilely v. City of Montgomery, 104 F.3d 1247, 1253 (11th Cir. 1997) (same).

Thus, Mr. Irick's malicious prosecution claim cannot be resolved by summary judgment.

## V.    QUALIFIED IMMUNITY

Officer Golphin also invokes the defense of qualified immunity, which shields government officials performing discretionary functions from liability whenever "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  McGreevy v. Stroup, 413 F.3d 359, 364 (3d Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Here, Officer Golphin asserts that he is entitled to qualified immunity with respect to Mr. Irick's false arrest/false imprisonment and malicious prosecution claims.  (Officer Golphin apparently does not assert qualified immunity with respect to the unreasonable use of force claim.  See Def. Mot. 16.)

Since qualified immunity protects "all but the plainly incompetent or those who

21

knowingly violate the law," Blackhawk v. Pennsylvania, 381 F.3d 202, 215 (3d Cir. 2004), a determination that probable cause was lacking does not require a finding that the arresting officer is liable for damages, Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 1999).  As the Supreme Court explained, "it is inevitable that law enforcement officials will mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable."  Anderson v. Creighton, 483 U.S. 635, 641 (1987).

"Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  "A court presented with a claim of qualified immunity must examine both the law that was clearly established at the time of the alleged violation and the facts available to the officer at that time, and must then determine, in light of both, whether a reasonable official could have believed his conduct was unlawful."  Paff, 204 F.3d at 431.  The officer's subjective intent is irrelevant.  Showers v. Spangler, 182 F.2d 165, 171 (3d Cir. 2000).

The Supreme Court has set forth a two-part inquiry to determine whether an officer can be held liable for an alleged violation of the plaintiff's constitutional rights.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  The Court first must determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show a constitutional violation.  Id.; Sherwood, 113 F.3d at 401.  If the plaintiff cannot show a constitutional violation, the officer is entitled to qualified immunity.

If, however, the plaintiff demonstrates that a constitutional injury occurred, the court must

22

determine whether the constitutional right was "a clearly established one, about which a reasonable person would have known." McGreevy, 413 F.3d at 364 (quoting Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000)). "Clearly established" means "some but not precise factual correspondence between relevant precedents and the conduct at issue," although "officials need not predict the future course of constitutional law." McLaughlin v. Watson, 271 F.3d 566, 571 (3d Cir. 2001). The "salient question" is whether the law at the time of the incident gives a defendant "fair warning" that the defendant's conduct was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741 (2002) (citing United States v. Lanier, 520 U.S. 259 (1997)). See also Rivas v. City of Passsaic, 365 F.3d 181, 200 (3d Cir. 2004) ("[I]n some cases 'a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.'") (quoting Hope, 536 U.S. at 741).

    With respect to the initial inquiry, Mr. Irick has presented sufficient evidence to, at a minimum, raise a genuine issue of fact as to whether a constitutional violation occurred. Assuming, *arguendo*, the existence of a constitutional violation, the Court must determine whether the constitutional right in question was "clearly established" such that a reasonable law enforcement officer could have believed that his conduct was lawful under the circumstances. Blackhawk, 381 F.3d at 215; see also Brosseau, 543 U.S. at 199 ("The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable police officer that his conduct was unlawful in the situation he confronted.").

    Here, Officer Golphin contends he is entitled to qualified immunity because there was no constitutional violation, and because his actions were objectively reasonable under the

circumstances.  Mr. Irick counters that the law is clearly established that an officer must have probable cause to arrest, and that police officers may not use unreasonable force even where there is probable cause to arrest.  The Court cannot determine whether Officer Gophin's conduct was objectively reasonable because, asserts Mr. Irick, the conduct purportedly supporting probable cause and the need for deadly force is disputed.

Mindful that the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition," Brosseau, 543 U.S. at 198 (quoting Saucier, 533 U.S. at 201), the Court must conclude that Officer Golphin is not entitled to qualified immunity.  First, the alleged facts, taken in the light most favorable to Mr. Irick, demonstrate a constitutional violation.  Second, the rights of citizens to be free from arrest without probable cause and the use of unreasonable force were clearly established at the time of this incident.

If Mr. Irick's version of the facts is true, no reasonable officer in Officer Golphin's position could have believed that, where a citizen standing several feet away with his dog beside him merely yells at the police, it is lawful to fire shots directly at the individual and then arrest him.  Thus, crediting Mr. Irick's story, there is no evidence that Mr. Irick engaged in any conduct that would render Officer Golphin's response objectively reasonable, notwithstanding Officer Golphin's subjective perception of the situation.  While an allegation of malice cannot defeat the qualified immunity defense as long as the officer acted in an objectively reasonable manner, Malley v. Briggs, 475 U.S. 335, 341 (1986), there are sufficient facts in the record for a jury to find that Officer Golphin's conduct was unreasonable under the circumstances.[10]

_____

[10] Generally, "qualified immunity is an objective question to be decided by the court as a matter of law."  Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004) (citing Doe v. Groody, 361 F.3d 232, 238 (3d Cir. 2004)).  However, the Third Circuit Court of Appeals

## VI.  STATE LAW CLAIMS

Mr. Irick also asserts claims for assault and battery, false arrest and false imprisonment,[11]

and malicious prosecution under Pennsylvania state law.  (Compl. ¶¶ 25-26.)

Officer Golphin moves for summary judgment on these claims, which parallel Mr. Irick's

federal claims, on the grounds that they fail for the same reasons the federal claims fail, namely,

Officer Golphin had probable cause to arrest and prosecute Mr. Irick, and the use of force was

warranted under the circumstances.

Mr. Irick's state law claims mirror his federal constitutional claims, and thus survive the

––––––––––––––––––––

has held that it is the province of the jury to determine "disputed historical facts material to the
qualified immunity question."  Id.; see also Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002)
("Curly I").  For example, a judge may use special jury interrogatories "to permit the jury to
resolve the disputed facts upon which the court can then determine, as a matter of law, the
ultimate question of qualified immunity."  Id. at 279.

Most recently, in Curly II, the Court of Appeals confirmed that "often the facts [relevant
to qualified immunity] are intensely disputed, and our precedent makes clear that such disputes
must be resolved by a jury after a trial."  Curley II, 2007 WL 2404803, at *7 (citing Estate of
Smith v. Marasco, 430 F.3d 140, 152-53 (3d Cir. 2005); Curley I, 298 F.3d at 278; Reitz v.
County of Bucks, 125 F.3d 139, 147 (3d Cir. 1997)).  Thus, as a practical matter, in such cases
"the immunity becomes no more than a mere defense."  Id. (citing Sloman v. Tadlock, 21 F.3d
1462, 1468 n.6 (9th Cir. 1994)).

As the Court of Appeals has recognized, "trying to separate the ultimate from the
underlying questions is no easy matter and can have a disturbing, unintended consequence.  It can
undermine the basic principle that both the threshold constitutional question and the immunity
question are to be decided on the totality of the circumstances."  Curly II, 2007 WL 2404803, at
*9.  Nonetheless, the Court of Appeals confirmed that "[i]n spite of the foregoing problem
inherent in articulating specific questions to address factual issues, our most current precedent
counsels that course."  Id. at *10.

[11] In Pennsylvania, false arrest and false imprisonment are essentially the same claim:
"Under certain circumstances . . . false arrest and false imprisonment are merely different labels
which describe the same conduct.  Detainment and confinement constitute the gravamen of the
civil wrong committed by an individual who illegally asserts or employs authority over another
while purportedly enforcing the law.  This civil wrong can be denominated as either false arrest
or false imprisonment."  Olender v. Twp. of Bensalem, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999)
(quoting Gagliardi v Lynn, 285 A.2d 109, 110 (1971)).

Motion for Summary Judgment for largely the same reasons his federal claims survive.  In Pennsylvania, "[t]he reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery."  Moore v. Vangelo, 222 F. App'x 167, 172 (3d Cir. 2007) (citing Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)).  A "false arrest" is defined as "(1) an arrest made without probable cause, or (2) an arrest made by a person without privilege to do so."  McGriff v. Vidovich, 699 A.2d 797, 799 n.3 (Pa. Commw. 1997).  The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention.  Renk, 641 A.2d at 293.  A malicious prosecution claim requires proof of the following elements: (1) the defendant must have instituted legal proceedings against the plaintiff without probable cause, (2) with malice, and (3) the proceedings must have terminated in favor of the plaintiff.  Kelley v. Gen. Teamsters, Chauffeurs, and Helpers Local Union 249, 544 A.2d 940, 941 (Pa. 1988).

Here, Officer Golphin asserts that the evidence in the record establishes "nothing more than an accidental shooting," and an arrest based on probable cause created by the dog's attack.  Officer Golphin maintains that he believed that Mr. Irick had set his dog on the officers in order to prevent the arrest of his wife.  This belief, argues Officer Golphin, is sufficient to establish the absence of malice and a legitimate reason for Mr. Irick's arrest and prosecution.

The facts are not so clear cut.  As previously discussed, the key facts regarding Mr. Irick's conduct and whether his dog moved toward or otherwise threatened the officers are contested.  There is evidence in the record sufficient to support Mr. Irick's version of the events, which includes an allegation of malice – i.e., that Officer Golphin arrested and prosecuted Mr. Irick in order to cover up his unlawful use of force.  Thus, for the reasons previously discussed with

26

respect to the federal claims, the Court will deny summary judgment with respect to Mr. Irick's state law claims.

In the alternative, Officer Golphin moves for summary judgment on the state law claims on the grounds that these claims are barred by the Pennsylvania Political Subdivisions Tort Claims Act, 42 Pa. C.S.A. §§ 8501, *et seq.*, which provides immunity from tort claims to state actors absent evidence of willful misconduct. The Tort Claims Act provides that a municipal employee may be personally liable for tortious conduct, but only in limited circumstances. An employee may be held liable only when his or her conduct constitutes a "crime, actual fraud, actual malice or willful misconduct." 42 Pa. C.S.A. § 8550.

A finding of willful misconduct requires evidence of an "intention to do what is known to be wrong, namely an intention . . . to arrest and imprison somebody when the officer knows that he does not have probable cause to make the arrest in question." In re City of Philadelphia Litig., 938 F. Supp. 1278, 1289 (E.D. Pa. 1996) ("In re City of Philadelphia Litig. II"); Renk, 641 A.2d at 293-94.[12] "Willful misconduct" thus requires the state actor to understand that the actions he took were illegal, and choose to take those actions anyway. In re City of Philadelphia Litig. I,

_____

[12] In Renk, the Pennsylvania Supreme Court stated:

> A police officer may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive, and for false imprisonment when a jury concludes that he did not have probable cause to make an arrest. It is conceivable that a jury could find a police officer liable for those torts under circumstances which demonstrate that the officer did not intentionally use unnecessary and excessive force, or did not deliberately arrest a person knowing that he lacked probable cause to do so.

Renk, 641 A.2d at 293-94.

938 F. Supp. 1264, 1273 (E.D. Pa. 1996) ("In re City of Philadelphia Litig. I").  To be "willful"

conduct, the actor must intend to bring about the result that followed, or at least be aware that it

was substantially certain to follow, such that intent may be implied.  Bright v. Westmoreland

County, 443 F.3d 276, 287 (3d Cir. 2006) (quoting Robbins v. Cumberland County Children and

Youth Servs., 802 A.2d 1239, 1252-53 (Pa. Commw. 2002); Renk, 641 A.2d at 293)).

     Here, there is evidence in the record that, viewed in the light most favorable to Mr. Irick,

indicates that Officer Golphin acted with the knowledge that his conduct was unlawful and with

the intention to bring about the likely consequences of that conduct – with respect to each of the

alleged acts involving the use of force, the arrest and the subsequent prosecution.  Thus, the

Court cannot conclude at this stage of the proceedings that Mr. Irick's state law claims are barred

by the Tort Claims Act.

**CONCLUSION**

     For the foregoing reasons, the Court will deny Officer Golphin's Motion for Summary

Judgment.  There are genuine issues of material fact with respect to each of Mr. Irick's remaining

federal and state law claims.  Mr. Irick has, however, withdrawn his Monell claims against the

City of Philadelphia and his Fourth Amendment unlawful search claim against Officer Golphin,

and these will be dismissed.

                             BY THE COURT:

                             S/Gene E.K. Pratter
                             GENE E.K. PRATTER
                             United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT IRICK,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA, ET AL.,** | : | |
| **Defendants** | : | **NO. 07-0013** |

## ORDER

AND NOW, this 19th day of May, 2008, upon consideration of the Amended Motion for Summary Judgment of Defendant Billy Golphin (Docket No. 17) and the Plaintiff's response thereto (Docket No. 18), it is hereby ORDERED that the Motion is DENIED with respect to all claims except the Fourth Amendment unlawful search claim, which Mr. Irick has withdrawn. That claim and all claims against the City of Philadelphia are DISMISSED based on Plaintiff's counsel's representation to the Court that Mr. Irick will not pursue these claims at trial.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge